[Civ. No. 38920. First Dist., Div. Two. Aug. 29, 1977.]

WILLIAM L. EVANS et al., Plaintiffs and Respondents, v.
JOHN W. THOMASON et al., Defendants and Appellants.

### COUNSEL

Michael P. Diepenbrock and McKenna, Diepenbrock & Wilkes for Defendants and Appellants.

Albert G. Rizzo, Jr., William B. Boone and Harry A. Allen for Plaintiffs and Respondents.

### OPINION

**TAYLOR, P. J.**—John W. Thomason, Craig Kimball and Calvin Ford, the landlords, appeal from an adverse judgment entered after a court trial in an action brought by the tenants, William L. Evans, et al.,[1] for personal injuries and property damages sustained in a fire. The landlords contend that: 1) the trial court's finding that the landlords' negligence was the proximate cause of the fire is not supported by the evidence; and 2) the tenants failed to establish a legal duty as to the particular risk. For the reasons set forth below, we have concluded that the judgment must be affirmed.

Viewing the record most strongly in favor of the judgment, as we must, the following pertinent facts appear: On August 10, 1972, the tenants signed a month-to-month lease at $110 a month for the rental of an unfurnished one-bedroom duplex apartment in Healdsburg, with M. T. Sager. On October 21, 1972, the landlords purchased the duplex. Although no new lease was signed, the tenants continued to occupy the premises and pay rent pursuant to the terms and conditions of their August 1972 lease with the former owner.

---

[1]The tenants, William L. Evans and his wife Kathleen, sought relief on their own behalf and as guardians ad litem of their two minor children.

The landlords maintained a joint bank account for the deposit of rental receipts and payment of the cost of repairs. The first months (November and December) after the landlords acquired the duplex, two of them (Kimball and Ford) worked as carpenter and electrician to renovate the unoccupied apartment adjacent to the one rented by the tenants. The landlords' acts in owning, operating, repairing and controlling the premises constituted a joint venture.

In December the bottom unit of a double plug electrical receptacle into which the freezer and refrigerator[2] were plugged ceased to function. There was no other outlet for these two appliances in the kitchen. The tenants then purchased a lightweight extension cord, attached both the freezer and refrigerator into two of the multiple prongs provided by the cord, and plugged the cord into the top unit of the receptacle.

In December, the tenants first advised the landlords of the defective kitchen outlet. At this time, the landlords were working on the apartment adjacent to that of the tenants. On at least two occasions, the landlords saw the tenants' extension cord with the freezer and refrigerator plugged into the top unit of the receptacle. The landlords promised the tenants that the defective outlet would be repaired, but never did so. The tenants were unable to find other comparable housing. On May 9, 1973, a fire in the extension cord caused severe personal injuries and property damage to the tenants and their household goods.

The landlords first argue that the evidence does not support the finding that their failure to repair the defective wall receptacle was the proximate cause of the fire.[3] It is readily apparent from the preceding summary of the record that there was ample substantial evidence to sustain the trial court's finding.[4] Questions of credibility must be resolved in favor of the determination of the trier of fact. When two or more inferences can reasonably be drawn from the evidence, a reviewing court may not substitute its deductions for those of the trier of fact. If on

---

[2]The court found that no evidence was introduced as to who owned or installed these appliances and that this fact was not material.

[3]The landlords' argument is that since the only expert witness indicated that the fire started in the extension cord, the tenants' use of the cord for two large appliances was the proximate cause of the fire. The landlords' contention, however, goes to factual, rather than legal or proximate cause.

[4]Although the finding could have perhaps been more felicitously phrased, findings are liberally construed in favor of the judgment (*Sunshine Art Studios of California, Inc.* v. *State Bd. of Equalization,* 39 Cal.App.3d 223, fn. 3 at p. 228 [114 Cal.Rptr. 24]; 4 Witkin, Cal. Procedure (2d ed.) Trial, § 345, p. 3146).

any material point the evidence is in conflict, it must be assumed that the court resolved the conflict in favor of the prevailing party (*Nestle* v. *City of Santa Monica,* 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480]; *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805]). Here, the conflicting evidence as to whether and when the landlords were told about the defective receptacle and whether or not they saw the extension cord attached to the two appliances was resolved in favor of the tenants by the trier of fact.

The uncontroverted evidence indicates that the tenants originally used both plug units of the kitchen double plug receptacle. After the bottom unit of the receptacle ceased to function the tenants asked the landlords to fix it and were told that the necessary repairs would be made. No other outlet was available for the freezer and refrigerator. Thereafter, the tenants connected both appliances to the extension cord and plugged the cord into the top socket. The landlords had notice of this fact and saw the two appliances attached to the extension cord on at least two occasions.

The landlords complain that although the expert testified that the overload on the extension cord caused the fire, the court found that the fire was caused by the defective outlet and not by the cord. In considering the question of proximate cause, foreseeability is a principal element (*Curley* v. *Vick,* 211 Cal.App.2d 670, 673 [27 Cal.Rptr. 501]). The precise consequence of a wrongful act or omission, however, need not be foreseeable. "The question is not whether defendant did foresee, or by the exercise of ordinary care should have foreseen the identical consequence that happened, in order that its acts or omission be a proximate cause of the injury or damage. The question is whether it is reasonably foreseeable that injury or damage would likely occur" (*Osborn* v. *City of Whittier,* 103 Cal.App.2d 609, 616 [230 P.2d 132]; *Herrera* v. *Southern Pacific Co.,* 155 Cal.App.2d 781, 786 [318 P.2d 784]).

In light of the dangerous nature of electricity,[5] which is a matter of common knowledge in this technological society, the landlords should have foreseen that their failure to repair the defective outlet might result in serious harm to the tenants and the tenants' household goods. In addition, two of the landlords (Kimball and Ford) had special expertise

[5]"[E]lectricity is 'the most dangerous and deadly power recognized as a necessary agency in developing our civilization. . . . Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use.' " (*Couch* v. *Pacific Gas & Elec. Co.,* 80 Cal.App.2d 857, 862 [183 P.2d 91].)

as electricians; they had notice of the defective unit and had seen the extension cord with the two large appliances plugged into the top unit. The landlords also acknowledged the immediate need for repairing electrical disorders, and indicated that their custom and past practice had been always to make repairs as expediently as possible. In the instant case, they apparently deviated from this beneficial past practice.

We think that the trial court properly concluded that, as a result of the landlords' repeated promises to repair, which lulled the tenants into a sense of security, and the landlords' subsequent failure to warn and to promptly repair the defective outlet, the tenants continued to use the extension cord for both appliances for a period of over two months and the fire resulted from this continued use. We therefore hold that the court was correct in its conclusion that the landlords' failure to remedy the defective outlet was the proximate cause of the fire.

We turn to the question of whether the tenants established that the landlords had a duty[6] toward them as to the particular risk. In recent years, the courts of this state have departed from the traditional common law doctrines of nonliability (*Golden* v. *Conway*, 55 Cal.App.3d 948 [128 Cal.Rptr. 69]) and applied the ordinary rules of negligence to actions for damages between landlords and tenants (*Brennan* v. *Cockrell Investments, Inc.,* 35 Cal.App.3d 796 [111 Cal.Rptr. 122]).

*Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], summarized the applicable rules of liability at pages 112 and 118-119. The basic policy of this state is set forth in section 1714 of the Civil Code.[7] ■ Every person is responsible for injuries caused to others by failure to use ordinary care or skill in management of his property. This fundamental principle should prevail in the absence of statutory exception or overriding public policy.[8] ■ Among the criteria for determining whether a landlord acted with ordinary care in the management of his property are: the likelihood of injury, the

---

[6]We note that in the closing brief, the landlords conceded the existence of a duty if the defective receptacle was the cause of the fire. We do not deem it proper, however, to rely on this concession, as we believe it is the result of the landlords' confusion of factual cause and legal cause.

[7]The statute provides: "Everyone is responsible, not only for the result of his willful acts, but also for injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the Title on Compensatory Relief."

[8]*Brennan* v. *Cockrell, supra,* extended the holding of *Rowland* to a landlord who was not in possession.

probable seriousness of such injury, the burden of reducing or avoiding the risk, and his degree of control over the risk-creating defect (*Brennan, supra,* at p. 801).

In the instant case, the landlords had a duty to the tenants under the usual standards of reasonableness. The tenants on at least two occasions notified the landlords that the kitchen outlet was defective. Thus, the landlords had notice of the condition as well as of the fact that there were no other outlets available for the two large appliances. In addition, two of the landlords (Ford and Kimball) were experienced electricians and, therefore, particularly aware of the dangers presented. Promises to repair were made, but not kept. These promises themselves indicate the landlords' awareness of their duty to the tenants. The burden of reducing or avoiding the risk was minimal. The record indicates that the landlords exercised control over the rented premises, as the lease expressly provided for retention of the landlords' right to enter at any reasonable time. This control, coupled with the tenants' repeated requests to repair, indicates that the landlords had ample opportunity to do so. In addition, as indicated above, for a period of two months, the landlords were renovating the apartment adjacent to that of the tenants and could easily have fixed the defective kitchen outlet with practically no inconvenience to themselves. By their own admission, the time to do so involved six to eight minutes at the most. In light of the landlords' admitted notice and knowledge of the serious consequences, the trial court could only conclude that the landlords did not exercise ordinary care in the management of their property and, therefore, violated their statutory duty under Civil Code section 1714.[9]

Although the matter is not raised by the parties, we feel constrained to turn briefly to the question of contributory negligence, which was pled in the landlords' answer to the tenants' complaint. As

[9]The landlords' reliance on *Schwartz* v. *McGraw-Edison Co.,* 14 Cal.App.3d 767,782-783 [92 Cal.Rptr. 776, 66 A.L.R.3d 808], and *Totten* v. *More Oakland Residential Housing, Inc.,* 63 Cal.App.3d 538, 544 [134 Cal.Rptr. 29] (hg. den., 1/5/77) is inapposite. In *Schwartz,* the tenant brought in a portable gas heater and the court held that the landlord was under no duty to inspect a portable appliance installed and maintained by the tenant. In the instant case, there was no evidence as to who installed or owned the freezer and refrigerator (fn. 2 above). In any event, a refrigerator and freezer are standard kitchen appliances for which a reasonable landlord should reasonably foresee and expect to have to provide a properly functioning outlet or outlets. In *Totten,* we based our decision primarily on the application of Civil Code section 1714 on a general theory of fairness that is also applicable here. However, in *Totten,* we were faced with an injury to a third party social guest of a tenant and, therefore, a mere licensee. The instant case is concerned with the landlords' liability for personal injuries and property damages to the tenants.

indicated above, under the particular circumstances, the trial court found none. Therefore the only question before us is whether there was contributory negligence as a matter of law. ■ Contributory negligence is "not established as a matter of law *unless the only reasonable hypothesis is that such negligence exists*; that reasonable or sensible men could have drawn that conclusion and none other." (*Anthony* v. *Hobbie,* 25 Cal.2d 814 [155 P.2d 826]; *Couch* v. *Pacific Gas, supra.*) ■ Here there was evidence that the tenants had no expert knowledge of electricity, but were nevertheless aware of the landlords' expertise. The tenants showed the landlords the use of the single cord to connect both utilities to the defective electrical outlet but received no warning that such a use was dangerous.[10] Furthermore, they repeatedly requested that the outlet be repaired. Under these circumstances, we hold that there was sufficient evidence to justify the trial court's finding of due care on the part of the tenants. Certainly, we cannot say that they were contributorily negligent as a matter of law.[11] Accordingly, we do not reach the question of the application of the new comparative negligence standard of *Li* v. *Yellow Cab Co.,* 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].[12]

The judgment is affirmed.

Rouse, J., and Cohn, J.,* concurred.

A petition for a rehearing was denied September 28, 1977, and appellants' petition for a hearing by the Supreme Court was denied October 27, 1977.

---

[10]The court also found that no evidence was introduced as to whether the tenants' extension cord was designed to carry the amount of current required to operate the freezer and refrigerator. The expert merely stated that the fire started from the extension cord because the refrigerator and freezer were pulling too much of a load for the particular cord *or* the cord had been damaged.

[11]Even assuming that the tenants were aware of some danger from the use of an extension cord for two large appliances, the landlords' promises to repair lulled them into temporarily living with a potentially dangerous condition. The fire did not occur until several months after the landlords were notified of and had actual knowledge of the defective unit and the tenants' use of the extension cord.

[12]*Li* was decided on March 31, 1975, and applies to all cases in which trial had not begun before *Li* became final (*Li, supra,* p. 829). A decision of the California Supreme Court becomes final after a maximum period of 90 days (Cal. Rules of Court, rule 24(a); U.S. Supreme Court rule 22). *Li* became final as to the state on May 1, 1975, and for all other purposes on July 1, 1975. The instant trial commenced on July 23, 1975.

*Assigned by the Chairperson of the Judicial Council.