[Civ. No. 4001. Fifth Dist. Feb. 5, 1980.]

MARY STOIBER, Plaintiff and Appellant, v.
IRENE HONEYCHUCK, Defendant and Respondent.

[Civ. No. 4044. 

MARY STOIBER, Plaintiff and Appellant, v.
FRANK P. SMITH REALTY AND MANAGEMENT,
INC., et al.,
Defendants and Respondents.

[Civ. No. 4240. 

MARY STOIBER, Plaintiff and Appellant, v.
RUTH V. EARLEY, Defendant and Respondent.

[Civ. No. 4255. 

MARY STOIBER, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
WILLIAM T. EARLEY, Real Party in Interest.

**COUNSEL**

Deborah A. Vollmer, Carey F. Scott and David J. Cooper for Plaintiff and Appellant and Petitioner.

Deadrich, Bates & Tutton, Kenneth H. Bates, Wagy, Bunker, Hislop & Lewis, William T. Helms and Michael W. Jansen for Defendants and Respondents and for Real Party in Interest.

No appearance for Respondent Court.

OPINION

FRANSON, J.—These consolidated proceedings (three appeals and a petition for writ of mandate) arise from a lawsuit filed by appellant-petitioner Mary Stoiber (hereinafter appellant) against William T. Earley and Ruth V. Earley, owners of the premises which had been occupied by appellant and her family under a month-to-month tenancy. The suit also names Irene Honeychuck, Frank P. Smith Realty and Management, Inc., Ron Perkins and Doe defendants as managing agents of the premises. Appellant seeks to hold the owners and managing agents liable for damages resulting from the dilapidated and unsafe condition of the rented premises.[1] Appellant alleged six causes of action based on the following theories: breach of warranty of habitability, nuisance, intentional infliction of emotional distress, negligent violation of statutory duty, constructive eviction, and injunctive relief from unlawful business practices. The trial court sustained various demurrers and granted defense motions for judgment on the pleadings to the end that all causes of action were stricken from the complaint other than the first cause of action for breach of warranty of habitability against William T. Earley as owner of the premises. The trial court's rulings were premised on the belief that the action against the landlord for breach of the warranty of habitability constituted appellant's exclusive remedy as a tenant for damages suffered from the dilapidation and unsafe condition of the premises. As we shall explain, the trial court erred in so holding. Under the law in California today, a tenant, by pleading proper facts, may state a cause of action in tort against his landlord for failure to keep the premises in a lawful state of habitability.

For purposes of this appeal, we must assume the truth of all material allegations in the complaint (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60]). The complaint alleges that appellant and her family occupied the premises at 117 Hughes Avenue in Oildale, California, under a month-to-month tenancy from October 8, 1974, until August 19, 1977. The monthly rent was initially $110 and was later raised to $135. During appellant's tenancy, the premises were owned by William T. Earley. Ruth Earley was the owner of the premises for a three-day period. From the commencement of appellant's

---

[1] Appellant's lawsuit followed the filing of an unlawful detainer action by William T. Earley, owner of the subject premises. The unlawful detainer action was filed after the Kern County Health Department ordered on June 10, 1977, that the premises be vacated and destroyed within 30 days, due to numerous housing code violations. Appellant did not vacate the premises until August 19, 1977.

tenancy until January 1977, Irene Honeychuck collected rent and managed the rental property for Earley. From January 1977 until the termination of appellant's tenancy, Frank P. Smith Realty and Management assumed the responsibility for collecting rent and managing the property for Earley. Ron Perkins was, during that period, an employee of Frank P. Smith Realty and Management who performed management duties for his employer.

The complaint also contained the following allegations of agency: "Plaintiff is informed and believes, and on that ground alleges that at all times mentioned herein, each of the defendants was the agent of the other, and all acts alleged herein to have been committed by any one of them was committed on behalf of every other defendant." Additionally, it was alleged in the amendment to the second amended complaint, that each of the defendants conspired with the others to maintain the premises with total disregard for the warranty of habitability.

Regarding the condition of the subject premises, appellant alleged that: "On or about October 8, 1974, to the present, numerous defective and dangerous conditions were in existence, including, but not limited to leaking of sewage from the bathroom plumbing; defective and dangerous electrical wiring; structural weaknesses in the walls; deteriorated flooring; falling ceiling; leaking roof; dilapidated doors; broken windows; and other unsafe and dangerous conditions. *These defective conditions were unknown to plaintiff at the time she moved in to the premises*, but as she continued to live on the premises, she became increasingly aware of them." (Italics added.)

Also attached to the complaint was a copy of the Kern County Health Department's notice to vacate and demolish the subject premises which listed the following violations among others: heavy cockroach infestation, broken interior walls, broken deteriorated flooring on front porch, falling ceiling, deteriorated, overfused electrical wiring, lack of proper plumbing connection to sewage system in bathroom, sewage under bathroom floor, leaking roof, broken windows, and fire hazard.

Appellant alleged that the defective conditions were not caused by the wrongful or abnormal use of the premises by her or anyone acting under her authority.

Appellant also alleged that defendants had actual and constructive knowledge of each of the defective conditions and failed to correct them

after passage of a reasonable time. Appellant further alleged that she had repeatedly notified both Irene Honeychuck and Ron Perkins (an employee of Frank P. Smith Realty and Management) of defective conditions, and that no effort was made to repair the defects, except that on one occasion a plumber had been sent in response to a complaint regarding the toilet.

Appellant alleged that as a direct and proximate result of the defendants' failure to correct the defective conditions, she suffered discomfort and annoyance, resulting in general damages in the amount of $20 a day; that the failure to correct the conditions caused her to suffer property damage and economic loss including but not limited to water damage to furniture, mattress and curtains.

Appellant also alleged that the defendants' failure to correct the defective conditions was knowing, intentional and willful, and that she suffered extreme emotional distress resulting from the condition of the premises. Additionally, the complaint alleged that defendants' conduct was malicious and oppressive; punitive damages in the amount of $10,000 were sought. Specific allegations relating to each asserted theory of liability will be discussed in greater detail below.

## A Tenant is Not Precluded From Suing His Landlord in Tort for Damages Resulting From the Landlord's Breach of the Warranty of Habitability

In reaching a decision whether the tenant's action sounding in contract for breach of the warranty of habitability is the only remedy available against a landlord for failure to repair and maintain the premises in a habitable condition, we first should briefly review the origin and development of the warranty of habitability in California. In *Hinson v. Delis* (1972) 26 Cal.App.3d 62 [102 Cal.Rptr. 661], the Court of Appeal abolished the traditional common law rule that a landlord owed no duty to his tenant to repair and maintain the premises since the possession and control of the premises are vested with the tenant. The *Hinson* court imposed a warranty of habitability in all residential leases as a matter of law. *Hinson* arose in the context of a tenant's action for declaratory and injunctive relief to prevent eviction for nonpayment of rent. The court held the tenant was obliged to make rental payments only after the landlord complied with his duty to substantially obey the housing code and make the premises habitable when defects developed

which were not caused by the tenant. The court observed, "[t]he implied warranty cases described above permit the most equitable remedy, in that the tenant is not absolved from all liability for rent, but remains liable for the reasonable rental value of the premises, as determined by the trial court, for such time as the premises were in violation of the housing codes." (*Id.*, at p. 70.)

In *Green* v. *Superior Court* (1974) 10 Cal.3d 616 [111 Cal.Rptr. 704, 517 P.2d 1168], our Supreme Court adopted the *Hinson* warranty theory and held that a breach of the warranty could be asserted as an affirmative defense in a landlord's action for unlawful detainer for nonpayment of rent. The court rejected the long established rule that a landlord's failure to perform any duty to maintain the premises was independent of the tenant's duty to pay rent. In the modern residential lease, governed by contract principles, the tenant's duty to pay rent is mutually dependent upon the landlord's fulfillment of his implied warranty of habitability. Since the landlord's breach may be directly relevant to the issue of possession, the tenant may be able to prove that no rent is in fact due and owing (10 Cal.3d at p. 635). In approving the implied warranty doctrine, *Green* noted that under the comprehensive housing codes of today, public policy requires landlords to bear the primary responsibility for maintaining safe, clean and habitable housing. The court defined the scope of the warranty as follows: "Under the implied warranty which we recognize, a residential landlord covenants that premises he leases for living quarters will be maintained in a habitable state for the duration of the lease. This implied warranty of habitability does not require that a landlord ensure that leased premises are in perfect, aesthetically pleasing condition, but it does mean that 'bare living requirements' must be maintained. In most cases substantial compliance with those applicable building and housing code standards which materially affect health and safety will suffice to meet the landlord's obligations under the common law implied warranty of habitability we now recognize." (*Id.*, at p. 637, fn. omitted.)[2]

Of great importance to the decision which we reach today is the express holding in *Green* that the statutory remedies provided a tenant

---

[2] In Moskovitz, *The Implied Warranty of Habitability: A New Doctrine Raising New Issues* (1974) 62 Cal.L.Rev. 1444, 1458, it is argued that the housing codes should be viewed as a floor and not a ceiling so that the warranty of habitability would include all threats to a tenant's health or safety even though not expressly covered by the housing codes.

under Civil Code section 1941 et seq.[3] were not intended by the Legislature as the tenant's exclusive remedy for the landlord's failure to repair. "Although past cases have held that the Legislature intended the remedies afforded by section 1942 to be the sole procedure for enforcing the statutory duty on landlords imposed by section 1941 [citations], no decision has suggested that the Legislature designed these statutory provisions to displace the common law in fixing the respective rights of landlord and tenant. On the contrary, the statutory remedies of section 1942 have traditionally been viewed as additional to, and complementary of, the tenant's common law rights." (10 Cal.3d at pp. 629-630, italics added.) Thus, "...*the statutory framework of section 1941 et seq. has never been viewed as a curtailment of the growth of the common law in this field.*" (10 Cal.3d at p. 630, italics added.)

*Green* recognized that the ascertainment of damages for breach of the warranty would be difficult, but no more so than in other tort and contract situations, and the courts must do the best they can. The measure of damages should be the difference between the fair rental value of the premises if they had been as warranted, and the fair rental value as they were during the occupancy in the unsafe or unsanitary condition (10 Cal.3d 638). Another reasonable approach is a percentage reduction of use: reducing the tenant's rental obligation by a percentage corresponding to the relative reduction of use of the leased premises caused by the landlord's breach (10 Cal.3d 639, fn. 24). *Green*, however, did not address the issue of damages for tortious injury such as discomfort, annoyance or mental anguish resulting from the breach of warranty. The importance of this type of damage is forcefully explained by Professor Moskovitz: "Generally, the residential tenant who has suffered a breach of the warranty does not lose money. He instead cannot bathe as frequently as he would like or at all if there is inadequate hot water; he must worry about rodents harassing his children or spreading

---

[3]Civil Code section 1941 in essence provides that the lessor of a building intended for use as a dwelling must, in the absence of a contrary agreement, put it in fit condition for such use, and repair all subsequent dilapidations "which render it *untenantable*," except those caused by the tenant's negligence.

Under Civil Code section 1942, the tenant cannot compel the making of necessary repairs; but he can give notice of dilapidations, and if the landlord does not repair them within a reasonable time the tenant may elect (a) to make the repairs himself and deduct the cost from the rent, or (b) to abandon the premises and be discharged from payment of rent or performance of other obligations. The maximum allowable deduction for repairs made is one month's rent and the remedy of repair and deduct is available only once in any 12-month period.

Civil Code section 1941.1 added in 1970 specifies the dilapidations which render a dwelling untenantable under section 1941.

disease if the premises are infested; or he must avoid certain rooms or worry about catching a cold if there is inadequate weather protection or heat. Thus discomfort and annoyance are the common injuries caused by each breach and hence the true nature of the general damages the tenant is claiming." (62 Cal.L.Rev. at pp. 1470-1471.)

In *Quevedo* v. *Braga* (1977) 72 Cal.App.3d Supp. 1 [140 Cal.Rptr. 143], the Appellate Department of the Los Angeles Superior Court contributed to the further expansion of the tenant's rights by holding a breach of the implied warranty of habitability would support an independent cause of action against the landlord for damages. The plaintiff in *Quevedo* had filed a complaint stating two causes of action, the first seeking retroactive rent abatement for the alleged overpayment of rent and the second seeking damages for discomfort and annoyance. The trial court dismissed the complaint, and the appellate department of the superior court reversed the order of dismissal as to the cause of action for retroactive rent abatement and affirmed the dismissal of the cause of action seeking damages for discomfort and annoyance. In holding the tenant could not recover for discomfort and annoyance, the *Quevedo* court noted that the sole theory of liability alleged was the implied warranty of habitability; no cause of action in tort was pleaded. Recognizing the importance of the form of action, the court stated: "Plaintiffs allege in the second cause of action...by reason of the breach of implied warranty of habitability, they suffered discomfort and annoyance, to their detriment in the amount of $3,000.

"In support of this cause of action, appellants cite cases allowing recovery for discomfort and annoyance suffered by occupants of land, regardless of whether they also suffered physical injury. *However, those cases involve actions sounding in tort, for trespass or nuisance.* No authority has been cited to us, and we know of none, allowing such recovery in an action for breach of an implied warranty in a contract.

"While it is true that '[a]n act that constitutes a breach of contract may also be tortious...' [citations], *the plaintiffs here did not bring an action sounding in tort*, but sued rather for breach of contract." (*Id.*, at p. Supp. 9, italics added.)

Although *Hinson, Green* and *Quevedo* do not address the question whether a tenant may maintain a tort action against his landlord for damages suffered by way of annoyance or discomfort or for injury to

his personal property caused by the landlord's failure to keep the premises in a habitable condition, we believe that under the expansive rationale of *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the question must be answered in the affirmative. In *Rowland*, the Supreme Court repudiated the traditional trespasser-licensee-invitee classification of duties of an owner or possessor of land, and substituted in place of these rigid classifications the basic rule of *foreseeability* of injury to others. The holding was based on Civil Code section 1714 which provides: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the Title on Compensatory Relief." (Civ. Code, § 1714, subd. (a).) Emphasizing the broad language of the code section, the *Rowland* court stated: "Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714..., no such exception should be made unless clearly supported by public policy." (69 Cal.2d at p. 112; see also 3 Witkin, Summary of Cal. Law (8th ed. 1978 supp.) § 453A, pp. 132-133.)

We do not write upon a clean slate in deciding whether public policy today calls for an exception to the liability principle articulated in section 1714 insofar as the landlord-tenant relationship; other courts and legal commentators have paved the way. In *Brennan* v. *Cockrell Investments, Inc.* (1973) 35 Cal.App.3d 796 [111 Cal.Rptr. 122], a tenant sued his landlord for injuries sustained when the back stairway railing broke and plaintiff fell. The trial judge refused an instruction based on *Rowland* v. *Christian* and the appellate court reversed for failure to give the instruction. *Brennan* noted the effect of Civil Code section 1714 and the trend the law is now taking toward imposing on owners and occupiers of premises a single duty of reasonable care in all circumstances (35 Cal.App.3d at pp. 801-802). Mr. Witkin observes and quotes from *Brennan* as follows: "The contention that a landlord should not be subject to the new theory of liability because he is not in possession and control of the land is unsound. '[*I*]*t is impossible to perceive any legitimate public interest that would be promoted by the creation of a landlord immunity exception to the code provision.* That a land-

lord must act toward his tenant as a reasonable person under all of the circumstances, including the likelihood of injury, the probable seriousness of such injury, the burden of reducing or avoiding the risk, and his degree of control over the risk-creating defect, seems a sound proposition and one that expresses well the principles of justice and reasonableness upon which the law of torts is based. It is no part of fairness and rationality to transform possession and control from mere factors bearing on negligence into barriers to consideration of that issue.' (35 C.A.3d 801.)

"The trend of decisions in other jurisdictions is to follow California's lead in applying ordinary rules of negligence to owners and occupiers of land. 'If this trend continues, questions of possession and control, answers to which have been prerequisite to even a consideration of the negligence of an owner or occupier of land, will everywhere be relevant only as they bear on such basic tort issues as the foreseeability and unreasonableness of the particular risk of harm. The direction the law is now taking clearly is toward "imposing on owners and occupiers a single duty of reasonable care in all the circumstances."'" (3 Witkin, Summary of Cal. Law (8th ed. 1978 supp.) § 453A, pp. 132-133, italics added; see also *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 513 [118 Cal.Rptr. 741, 81 A.L.R.3d 628]; *Golden* v. *Conway* (1976) 55 Cal.App.3d 948, 955, 959 [128 Cal.Rptr. 69].)

In *Evans* v. *Thomason* (1977) 72 Cal.App.3d 978 [140 Cal.Rptr. 525], the court applied the *Rowland* principles in a negligence action between a tenant and landlord. "In the instant case, the landlords had a duty to the tenants under the usual standards of reasonableness. The tenants on at least two occasions notified the landlords that the kitchen outlet was defective. Thus, the landlords had notice of the condition . . . . In addition, two of the landlords. . . were experienced electricians and, therefore, particularly aware of the dangers presented. . . . In light of the landlords' admitted notice and knowledge of the serious consequences, the trial court could only conclude that the landlords did not exercise ordinary care in the management of their property and, therefore, violated their statutory duty under Civil Code section 1714." (*Id.*, at p. 985.) The Supreme Court denied a hearing in *Evans*.

Manifestly, under the reasoning of *Green* and *Rowland* and assuming appropriate pleadings of fact, a tenant may state a cause of action in tort against his landlord for damages resulting from a breach of the im-

plied warranty of habitability. We turn now to the specific allegations in appellant's second, third, fourth, fifth and sixth causes of action.

## The Cause of Action for Nuisance

The second cause of action in appellant's second amended complaint seeks compensatory and punitive damages and alleges "These defective conditions constituted a nuisance, depriving plaintiff of the safe, healthy, and comfortable use of the premises . . . ." Code of Civil Procedure section 731 specifically authorizes an action by any person whose property is injuriously affected, or whose enjoyment of property is lessened by a nuisance, as the same is defined in Civil Code section 3479 (see also 47 Cal.Jur.3d, Nuisances, § 59, p. 299). Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ."

The statutory definition of nuisance appears to be broad enough to encompass almost any conceivable type of interference with the enjoyment or use of land or property. As stated by Prosser: "There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive definition." (Prosser, Law of Torts (4th ed. 1971) § 86, p. 571, fns. omitted.)

■ Nuisance liability is not precluded by the existence of a contractual relationship between the tenant and landlord. It is hornbook law that an act that constitutes a breach of contract may also be tortious. In *Jones* v. *Kelly* (1929) 208 Cal. 251 [280 P. 942], tenants husband and wife sued their landlord in tort for allegedly cutting off the tenants' water supply, seeking both actual and exemplary damages. In reversing the trial court's order sustaining a demurrer without leave to amend, the Supreme Court pointed out at page 255 that "'every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights,'" citing Civil Code section 1708. This duty is independent of the contract and attaches over and above its terms; thus, the tenants may treat the injury to their tenancy as a tort or as a breach of contract at their election (208 Cal. at

p. 255). "That [tenants] have a proprietary interest in the [leased] premises which goes by the name of estate is not open for debate." (*Ibid.*)

In *Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328 at page 337 [5 Cal.Rptr. 686, 353 P.2d 294], our Supreme Court stated: "It is settled that, regardless of whether the occupant of land has sustained physical injury, he may recover damages for the discomfort and annoyance of himself and the members of his family and for mental suffering occasioned by fear for the safety of himself and his family when such discomfort or suffering has been proximately caused by a trespass or a nuisance."

■ Appellant's tenancy is a sufficient property interest to give her standing to bring an action based on nuisance (*Jones* v. *Kelly, supra,* 208 Cal. at p. 255; *Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 125 [99 Cal.Rptr. 350]; see also Prosser, Law of Torts, *supra,* at p. 593).

The general requirements for pleading nuisance have been satisfied here. Appellant has alleged facts showing a substantial interference with the use and enjoyment of the premises—not merely de minimis interference. The fact that the defendants' alleged misconduct consists of omission rather than affirmative actions does not preclude nuisance liability (see Prosser, Law of Torts, *supra,* pp. 575-577).

■ A nuisance may be either a negligent or an intentional tort. If the latter, then exemplary damages are recoverable (*Sturges* v. *Charles L. Harney, Inc.* (1958) 165 Cal.App.2d 306, 321 [331 P.2d 1072]; see 47 Cal.Jur.3d, Nuisances, § 62, pp. 308-309; BAJI No. 14.71 (6th ed.) pp. 635-636). Appellant has pleaded sufficient facts to support her prayer for exemplary damages. She alleged that defendant had actual knowledge of defective conditions in the premises including leaking sewage, deteriorated flooring, falling ceiling, leaking roof, broken windows, and other unsafe and dangerous conditions. She also alleged that defendants "In maintaining said nuisance,...acted with full knowledge of the consequences thereof and the damage being caused to plaintiff, and their conduct was willful, oppressive and malicious."

We of course do not pass on any possible defenses which defendants may have to appellant's claim for compensatory and exemplary damages. Consent, contributory negligence and assumption of the risk are

affirmative defenses to be pleaded by the defendants and are irrelevant to the question of whether appellant has stated a cause of action for a nuisance.

### THE CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The third cause of action in appellant's complaint seeks compensatory and punitive damages and alleges that appellant suffered "extreme emotional distress" as a result of the defendants "knowing, intentional, and willful" failure to correct defective conditions of the premises.

The elements of the tort for intentional infliction of mental distress are: (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of emotional distress (*Newby* v. *Alto Riviera Apartments* (1976) 60 Cal.App.3d 288, 296 [131 Cal.Rptr. 547]; *Golden* v. *Dungan* (1971) 20 Cal.App.3d 295, 302-311 [97 Cal.Rptr. 577]; see Rest.2d Torts, § 46). The right to recover for emotional distress without physical injury is recognized in California in situations involving extreme and outrageous conduct. (*State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330 [240 P.2d 282]; *Golden* v. *Dungan, supra,* 20 Cal.App.3d at pp. 307-308; see also Prosser, Law of Torts, *supra,* p. 60; Rest.2d Torts, § 46, com. k.) The modern rule is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress (see Prosser, Law of Torts, *supra,* p. 56). "Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." (*Newby* v. *Alto Riviera Apartments, supra,* 60 Cal.App.3d 288, 297.)

In *Newby* v. *Alto Riviera Apartments, supra,* 60 Cal.App.3d 288, the evidence showed that after the plaintiff tenant organized opposition to rent increases, the landlord shouted at the tenant and insulted her, directed her to vacate the premises. The plaintiff was also told if she did not leave "..., We [will] handle this the way we do down South." (*Id.,*

pp. 297-298.) The court held this sufficient to meet the test of outrageous behavior.

In *Aweeka v. Bonds* (1971) 20 Cal.App.3d 278 [97 Cal.Rptr. 650], the landlord had failed to keep the premises in good repair and the tenant exercised his "repair and deduct" remedy under Civil Code sections 1941 and 1942. The landlord thereafter increased the rent from $75 per month to $145 per month; this increase was clearly not justified by the rental value of the premises, and the landlord was aware that the tenant could not pay the increased rent. On these facts, it was held the complaint alleged a cause of action for intentional infliction of mental distress (*id.*, at p. 281).

■ Thus, it is clear that the availability of a remedy for breach of implied warranty of habitability does not preclude a tenant from suing his landlord for intentional infliction of mental distress if the landlord's acts are extreme and outrageous and result in severe mental distress. ■ Whether this is so under the present allegations, presents a factual question—it cannot be said as a matter of law that appellant has not stated a cause of action.

### CAUSE OF ACTION FOR NEGLIGENT VIOLATION OF STATUTORY DUTY

■ Appellant alleges in her fourth cause of action: "the laws and regulations of the State of California, including but not limited to, Section 1941.1 of the...Civil Code, imposed a statutory duty on defendants...to maintain the premises...in safe and habitable condition." She also alleges that "In failing to repair the defective and dangerous conditions..., defendants have breached their statutory duty...." Appellant seeks compensatory damages for the discomfort and annoyance she suffered ($20 for each day she lived on the premises) and "property damage...including, but not limited to, water damage to furniture, mattress and curtains."

■ Preliminarily, we observe that unlike the general rule in personal injury cases, the *negligent* infliction of emotional distress—anxiety, worry, discomfort—is compensable without physical injury in cases involving the tortious interference with *property rights* (*Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 433-434 [58 Cal.Rptr. 13, 426 P.2d 173]; 46 Cal.Jur.3d, Negligence, § 74, p. 250). Thus, if defendants' failure to repair the premises constitutes a tort grounded on

negligence, appellant is entitled to prove her damages for emotional distress because the failure to repair not only allegedly caused water damage to appellant's furnishings, it also must be deemed to constitute an injury to her tenancy interest (right to habitable premises) which is a species of property (*Jones* v. *Kelly, supra*, 208 Cal. at p. 255).

Appellant asks this court to adopt the approach of *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151] and *United Farm Workers of America* v. *Superior Court* (1975) 47 Cal.App.3d 334 [120 Cal.Rptr. 904] and find that Civil Code section 1941.1 and the Uniform Housing Code (Cal. Admin. Code, tit. 25, ch. 1) which establish standards for habitability of housing, fix as a matter of law the duty of care owing by a landlord to his tenant which would support a common law action in negligence. In *Vesely* v. *Sager, supra*, 5 Cal.3d 153,[4] the Supreme Court held that Business and Professions Code section 25602 which makes it a misdemeanor to furnish an alcoholic beverage to an obviously intoxicated person would support a duty of care, and the attendant standard of conduct required of a reasonable man even though the legislative enactment did not provide for civil liability. In *United Farm Workers of America* v. *Superior Court, supra*, 47 Cal.App.3d 334, this court held that Labor Code sections 1011 and 1012 making it a misdemeanor to misrepresent by label or otherwise that union labor was employed in the manufacture, production or sale of a product would support under proper allegations civil damages even though the statutes did not provide for civil liability.

However, because we are dealing with the landlord-tenant relationship and the responsibilities of owners and occupiers of real property, we believe the better approach is to apply the rationale of *Rowland* v. *Christian, supra*, 69 Cal.2d 108, and hold the common law duty of care to be that specified in Civil Code section 1714 that all persons must exercise due care in the management of their property to avoid foreseeable injury to others. (Id., at pp. 112-120.) As *Rowland* points out, a departure from the fundamental principle of liability articulated in Civil Code section 1714 "involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the de-

---

[4]The *Vesely* holding was expressly abrogated when the Legislature amended Civil Code section 1714 in 1978.

fendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.*, at pp. 112-113.) In the typical rental situation involving a dwelling house, the foreseeability of harm to a tenant from the landlord's failure to maintain the premises in a habitable condition is obvious; the degree of certainty that the tenant suffered injury and the closeness of the connection between the landlord's conduct and the injury is readily ascertainable by proof in each case; the moral blame attached to the landlord's conduct in not complying with the habitability requirements articulated in the Civil Code and the policy of preventing future harm are present. Nor can we say that the imposition of a duty to exercise care with resulting liability for breach would unduly extend a landlord's burden insofar as the availability, cost and prevalence of insurance for the risk involved. In short, we believe that under the policy standards articulated in *Rowland*, a due regard for human safety and health compels the imposition on a landlord of a duty of due care in the maintenance of the premises.

By utilizing Civil Code section 1714 as the standard of care owed by a landlord, the tenant will have the benefit of Evidence Code section 669[5] if the tenant is able to prove that the landlord violated a statute or regulation and the violation proximately caused injury to his person or property. Since Civil Code section 1941 and the housing codes of California were designed to protect the health and safety of tenants, a rebuttable presumption of negligence on the part of the landlord would arise provided the tenant proves that the landlord violated the statute and the violation proximately caused his injuries.

The presumption, of course, may be rebutted by proof that the landlord did what might reasonably be expected of a person of ordinary

---

[5]Section 669 of the Evidence Code in pertinent parts reads: "(a) The failure of a person to exercise due care is presumed if:

"(1) He violated a statute, ordinance, or regulation of a public entity;

"(2) The violation proximately caused death or injury to person or property;

"(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

"(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

"(b) This presumption may be rebutted by proof that:

"(1) The person violating the statute, ordinance, or regulation did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law;..."

prudence, acting under similar circumstances, who desired to comply with the law. (Evid. Code, § 669, subd. (b)(1).) Furthermore, the landlord will have available the affirmative defenses of the tenant's negligence and assumption of the risk which if properly pleaded and proved could negate liability.

Respondents again argue that any expansion of the remedies provided by Civil Code sections 1941 and 1942 must come from the Legislature. ▆ We again respond by quoting from *Green v. Superior Court, supra*, 10 Cal.3d: "These limitations [repair and deduct remedy limited to one month's rent each year] demonstrate that the Legislature framed the section only to encompass relatively minor dilapidations in leased premises. [Citations.]..., in the most serious instances of deterioration, ...section 1942 does not provide, and could not have been designed as, a viable solution." (*Id.*, at pp. 630-631.) "[T]he statutory framework ...has never been viewed as a curtailment of the growth of the common law in this field." (*Id.*, at p. 630.) *Gustin v. Williams* (1967) 255 Cal.App.2d Supp. 929 [62 Cal.Rptr. 838], cited by defendants, must be deemed overruled by the rationale of *Green v. Superior Court, supra*, 10 Cal.3d 616, and *Rowland v. Christian, supra*, 69 Cal.2d 108. (See *Minoletti v. Sabini* (1972) 27 Cal.App.3d 321 [103 Cal.Rptr. 528]; *Brennan v. Cockrell Investments, Inc., supra*, 35 Cal.App.3d 796; *Evans v. Thomason, supra*, 72 Cal.App.3d 978, 984-985.)

▆ Finally, we observe that our holding that Civil Code section 1714 may be used as a springboard for a tenant's negligence action against his landlord for failure to maintain the premises in a habitable condition accords with the statement of Mr. Justice Stone that the body of the statutory law is "both a declaration and a source of law, and [may be used] as a premise for legal reasoning." (*The Common Law in the United States* (1936) 50 Harv.L.Rev. 4, 13; see Rest.2d Property (1977) (Landlord & Tenant) Introduction, p. VII.)

THE CAUSE OF ACTION FOR CONSTRUCTIVE EVICTION

▆ The cause of action for constructive eviction seeks compensatory and punitive damages and alleges: "Due to the continuing intolerable conditions of the [subject premises], plaintiff and her family were compelled to abandon the premises, which they did, on or about August 19, 1977." ▆ "A constructive eviction occurs when the acts or omissions...of a landlord, or any disturbance or interference with

the tenant's possession by the landlord, renders the premises, or a substantial portion thereof, unfit for the purposes for which they were leased, or has the effect of depriving the tenant for a substantial period of time of the beneficial enjoyment or use of the premises." (*Groh* v. *Kover's Bull Pen, Inc.* (1963) 221 Cal.App.2d 611, 614 [34 Cal.Rptr. 637]; see also 42 Cal.Jur.3d, § 124, pp. 143-144.) Abandonment of premises by the tenant within a reasonable time after the wrongful act of the landlord is essential to enable the tenant to claim a constructive eviction (*id.*, at § 125, p. 144). Failure to repair and keep the premises in a condition suitable for the purposes for which they were leased has been held to constitute eviction (*id.*, at § 126, p. 145). ▮ Appellant has stated a cause of action for constructive eviction. She was forced to abandon the premises after the Kern County Health Department ordered the premises be vacated and destroyed. Whether she abandoned within a reasonable time would constitute a jury question.

▮ The damages recoverable for wrongful eviction, actual or constructive, include whatever amounts are necessary to compensate the tenant for the detriment proximately caused by the eviction or likely to result therefrom (*id.*, at § 132, p. 155). The measure of damages, as a general rule, is the value of the term, less the rent reserved (*ibid.*). In addition to the general damages representing the value of the tenant's unexpired term, recovery may be had for expenses of removal. Moreover, if the tenant wrongfully evicted elects to sue in tort, damages may be awarded for mental anguish and pain or physical injury; exemplary damages may also be recovered when the landlord's conduct justifies the award (*id.*, at pp. 156-157).

## CAUSE OF ACTION FOR UNLAWFUL BUSINESS PRACTICE

▮ In her sixth and final cause of action, appellant seeks only injunctive relief on the basis of "unfair business practices" by the defendants. She alleges on information and belief that defendants own and maintain "various" residential rental properties and that unsafe and unsanitary conditions similar to those on the subject premises exist on each of the other properties. Appellant alleges that defendants have actual and constructive knowledge of such defective conditions, but have failed to correct them within a reasonable time. Appellant prays for an order enjoining defendants from engaging in this unlawful business practice.

Business and Professions Code section 17200 (formerly Civ. Code, § 3369, subd. 3) provides: "As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising. . . ." Section 17203 provides: "Any person performing or proposing to perform an act of unfair competition within this state may be enjoined in any court of competent jurisdiction." Section 17204 provides that: "Actions for injunction pursuant to this chapter may be prosecuted by the Attorney General or any district attorney . . . upon their own complaint or upon the complaint of any board, officer, person, corporation or association, *or by any person acting for the interests of itself, its members or the general public.*" (Italics added.) Section 17205 provides, "Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state."

■ Historically, the tort of unfair business competition required a *competitive* injury. However, the language of section 17200 quoted above "demonstrates a clear design to protect consumers as well as competitors by its final clause, permitting inter alia, any member of the public to sue on his own behalf or on behalf of the public generally." (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 110 [101 Cal.Rptr. 745, 496 P.2d 817].) Thus, section 17200 is not confined to anticompetitive business practice but is equally directed toward "'the right of the *public* to protection from fraud and deceit.'" (*Ibid.*) Furthermore, the section 17200 proscription of "unfair competition" is not restricted to deceptive or fraudulent conduct but extends to any *unlawful* business practice (*id.*, at p. 111). The Legislature apparently intended to permit courts to enjoin ongoing wrongful business conduct in whatever context such activity might occur (*id.*, at p. 111; *People v. McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731]; see also Howard, *Former Civil Code, Section 3369: A Study in Judicial Interpretation* (1979) 30 Hastings L.J. 705; Note, *Unlawful Agricultural Working Conditions as Nuisance or Unfair Competition* (1968) 19 Hastings L.J. 398, 408-409).

In *Barquis, supra,* 7 Cal.3d 94, it was held in a unanimous opinion that repeated violations of specific provisions of both the Code of Civil Procedure and the Civil Code (initiation of actions by "form complaints" in improper counties for the purpose of impairing the adversaries' ability to defend) constituted "unlawful" conduct which if

repeatedly pursued as a "business practice" would be enjoinable under former Civil Code section 3369.

In *People* v. *McKale, supra*, 25 Cal.3d 626, the Supreme Court, again in a unanimous opinion, held that a complaint for injunctive relief stated a cause of action for unfair business practices under allegations that a mobilehome park owner had violated the Mobilehome Parks Act (Health & Saf. Code, § 18200 et seq.) and related sections of the Administrative Code by dumping waste water on the premises, improper burial of underground wiring and other allegations of failure to maintain mechanical, sanitary, safety and other installations within the park as required by law. The court rejected the owner's argument that the maintenance of a cause of action for unfair competition for violation of the Mobilehome Parks Act and health and sanitation statutes circumvents the specific statutory enforcement scheme provided by the act. The court noted that Business and Professions Code section 17205 provides that the remedies available in an unfair competition action are *cumulative* to any other remedies under state law unless otherwise expressly provided. (*Id.*, at pp. 630-633.)

Nevertheless, regardless of the broad scope of the injunctive relief afforded under the unfair business practices act, we conclude that appellant has failed to allege a cause of action for such relief. Appellant is not now in possession of any of the properties owned or managed by the defendants; therefore, she has no need of or standing to seek an injunction on her own behalf. Furthermore, appellant has failed to allege that she is suing on behalf of the general public. (Cf. *Barquis, supra*, 7 Cal.3d 94.)

We point out that the tenants who occupy the other dwellings have available to them all of the common law remedies which we have discussed today in addition to the remedies provided by Civil Code section 1941. The tenants would also have available to them the injunctive remedy under proper pleadings and proof of a nuisance as we have discussed in reference to appellant's second cause of action. (Code Civ. Proc., § 731; see 47 Cal.Jur.3d, Nuisances, § 50 et seq., pp. 284-294.)

CAUSES OF ACTION IN TORT MAY BE STATED AGAINST THE LANDLORD'S AGENTS UNDER PROPER FACTS

The demurrers of the agent defendants were granted on the ground that no cause of action could be stated against them on the basis of the

implied warranty of habitability because they did not have the status of landlords. As to the remaining tort causes of action, the trial court reasoned that a tenant's remedies were limited to a suit for breach of the implied warranty. We conclude that although the agent defendants may not be held liable under the implied warranty theory, causes of action may be stated against them in tort.

Since the suit for breach of the implied warranty is essentially a contractual one, the trial court correctly ruled the agents could not be held liable on the breach of warranty because an agent is ordinarily not liable on the contract when he acts on behalf of a disclosed principal (see generally, 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 185, pp. 780-781). Appellant relies on Civil Code section 2343 and *Bayuk* v. *Edson* (1965) 236 Cal.App.2d 309 [46 Cal. Rptr. 49], as establishing that the agent may be held liable despite the fact that his actions were in the context of a contract. Civil Code section 2343 provides in pertinent part: "One who assumes to act as an agent is responsible to third parties as a principal for his acts in the course of his agency, in any of the following cases...: [w]hen his acts are wrongful in their nature."

The passage from the *Bayuk* case on which appellant relies provides: "The fact that the tortious act arises during the performance of a duty created by contract does not negate the agent's liability. [Citation.]... '...The same act may be both a tort and a breach of contract....Even where there is a contractual relationship between the parties, a cause of action in tort may sometimes arise out of the negligent manner in which the contractual duty is performed....A tort may grow out of or be coincident with a contract, and the existence of a contractual relationship does not immunize a tortfeasor from tort liability for his wrongful acts in breach of the contract. [Citation.]'" (*Id.*, at p. 320.)

While Civil Code section 2343 and *Bayuk* indicate that the agent will be held liable for his torts despite the fact that he acts for a principal, nothing in *Bayuk* suggests that the agent should be held liable under contractual theories. *Bayuk* merely states that the contract does not immunize the agent from tort liability.

However, because the tenant's remedies against the landlord are not limited to breach of the warranty of habitability and he may also plead tort actions, it necessarily follows that the agent may also be held liable

on any properly pleaded tort causes of action. For example, since appellant can plead a cause of action in negligence against the landlord, such a cause of action could also be pleaded against the agent defendants. ■ The fact that an agent owes a duty to his prinicipal does not preclude him from also owing a duty to third parties foreseeably injured by his conduct. (See *Dillon* v. *Wallace* (1957) 148 Cal.App.2d 447, 455-456 [306 P.2d 1044].) ■ Appellant has alleged in her complaint that the rental agents acting for the Earleys assumed a duty toward her: "As agent of defendant WILLIAM T. EARLY [*sic*], defendant FRANK P. SMITH, Realty and Management has assumed in the course of its agency, functions, duties, and responsibilities of defendant EARLY [*sic*], who resides in Connecticut. These duties, responsibilities, and functions include, but are not limited to, the following: 1. Collection of rental payments from the plaintiff; 2. Maintenance and management of the premises at 117 Hughes Avenue." Similar allegations were made with respect to Irene Honeychuck. An attempt was made to allege Ron Perkins' duty by alleging that he was an employee of the defendant Frank P. Smith Realty and Management who managed and maintained the subject premises. Additionally, it is alleged that each of the defendants conspired with the others to maintain the premises with total disregard for, and in breach of, the warranty of habitability to the tenants.

Neither side has cited any controlling authority on the question of whether a rental agent managing the premises for the owner has a duty towards the tenant by virtue of that relationship. ■ *J'Aire Corp.* v. *Gregory, supra*, 24 Cal.3d 799, sets forth the criteria to be considered by courts in determining whether a defendant stands in such a position to a plaintiff that he owes him an affirmative duty. "...(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." (*Id.*, at p. 804.) The *J'Aire* court observed that in formulating duties, the Supreme Court "has repeatedly eschewed overly rigid common law formulations of duty in favor of allowing compensation for foreseeable injuries caused by a defendant's want of ordinary care." (*Id.*, at p. 805.)

■ Applying the criteria set forth in *J'Aire*, we conclude that the rental agents owed a duty of ordinary care towards the tenant because

the transaction between the rental agent and the landowner was clearly intended to affect the tenants, and because harm would be foreseeable to the tenants if the rental agent did not properly perform his duty. When the owner is located at some distance from the rental property as in the present case (Connecticut), the tenant's only practical recourse is to complain to the rental agent. Imposition of a duty on the rental agent would as a matter of public policy encourage the agent to pass the complaints along to the owner or to take action to properly maintain the property, if this is part of his responsibilities as agreed with the owner. For these reasons, we believe that appellant has pleaded a sufficient relationship between herself as tenant and the rental agent as defendant to survive the demurrer.

### RUTH EARLEY'S DEMURRER

The position of Ruth Earley with regard to the substantive issues appears at this stage to be identical to the position of her husband William T. Earley, because Ruth was alleged to have owned the property for at least a three-day period during appellant's tenancy. However, Ruth's demurrer to the amendment to the second amended complaint was sustained by the trial court on the ground of uncertainty. This was occasioned by a procedural defect in appellant's pleading. Instead of filing a third amended complaint, appellant merely filed an amendment to the second amended complaint. This was improper. ▇ Witkin observes at 3 California Procedure, section 841, pages 2447-2448: "Since the demurrer destroys the complaint as a pleading, the proper course is to file a completely new amended complaint, not an amendment to the old complaint." Therefore, on remand, appellant should file a third amended complaint including her original allegations and the additional allegations contained in her amendment to the second amended complaint (see *Cohen v. Superior Court* (1966) 244 Cal.App.2d 650, 655-658 [53 Cal.Rptr. 378]).

### CONCLUSION

We have concluded that the trial court erred in its rulings as to the second through fifth causes of action. Appellant's remedies are not limited to an action against the landlord for breach of the warranty of habitability, but include the right to sue the landlord and his agents in tort for damages for mental distress and injury to personal property suffered as a result of the failure to maintain the premises. Although

appellant may state multiple causes of action based on various theories of liability, she of course will not be permitted a double recovery.

We do not pass on the possible defenses of waiver, consent, estoppel, laches, contributory negligence and assumption of the risk which are matters to be pleaded by the defendants and are irrelevant to the questions decided on this appeal.

The judgments are reversed and a writ of mandate shall issue directing the superior court to set aside its order granting real parties' motions for judgments on the pleadings insofar as appellant's second, third, fourth and fifth causes of action. The trial court is also directed to set aside its order sustaining respondents' demurrers to these causes of action. The demurrer and order striking appellant's sixth cause of action for injunctive relief is affirmed. Appellant to recover her costs on appeal.

Hopper, J., concurred.

**BROWN (G. A.), P. J.**—I concur and wish to comment further upon a few points.

The principal opinion states that we do not write upon a clean slate. This need be emphasized lest this court be accused of judicial legislation. Being faithful to precedent and to our judicial duty, the result herein is compelled. All of the judicial legislating has already been done in such opinions as *Green* v. *Superior Court* (1974) 10 Cal.3d 616 [111 Cal.Rptr. 704, 517 P.2d 1168] and *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] by which we are bound. The body of appellate court opinions following the principles enunciated in *Green* and *Rowland* and other Supreme Court precedent clearly foreshadow the result herein. The principal opinion is nothing more than a careful articulation of the principles already set forth in judicial precedent as applied to the facts alleged in the complaint, which we must, of course, upon demurrer assume to be true.

This leads to the second point. We do not pass upon any defenses to the action, such as waiver, consent, assumption of risk, estoppel, and laches, which may exist. Though at this stage we must assume all the facts alleged are true, the facts actually proven at trial will undoubtedly cast a different light upon what is alleged. For example, the plaintiff occupied the premises between October 8, 1974, and August 19, 1977, a

period of almost three years. A number of serious and patent dilapidations are alleged. The complaint alleges that "These defective conditions were unknown to plaintiff at the time she moved in to the premises, but as she continued to live on the premises, she became increasingly aware of them." Three years to have become aware of dilapidations! Assuming she moved in under cover of darkness, daylight and a few days should have shed more than a little light on the situation. No facts are alleged showing she was restrained from vacating the premises. Indeed, she could have legally done so at any time by giving a 30-day notice or, because of the unheeded dilapidation, she could have simply abandoned the premises without obligation to pay further rent. (See *Green* v. *Superior Court, supra*, 10 Cal.3d at pp. 630-631.) The facts proven at trial, not legal theories, are what will be decisive.