Filed 9/11/23  Escalante v. Maximum Management Corp. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SILVIA ESCALANTE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MAXIMUM MANAGEMENT CORPORATION,<br><br>Defendant and Respondent. | B317792<br><br>Los Angeles County<br>Super. Ct. No. 20STCV03859 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Reversed.

Akhidenor Law and Michael O. Akhidenor for Plaintiff and Appellant.

Turner Henningsen Wolf & Vandenburg, Matthew C. Wolf, Lauren VanDenburg and Robert Cho for Defendant and Respondent.

————————

Plaintiff Silvia Escalante appeals the judgment entered after the trial court granted summary judgment in favor of her landlord Maximum Management Corporation. She contends the trial court erred in granting summary judgment because there are triable issues of fact on her causes of action for breach of the implied warranty of habitability and negligent maintenance of premises. We agree the trial court erred in granting summary judgment, reverse the judgment, and remand for further proceedings.

## BACKGROUND

Beginning in March 1998, Escalante was a tenant in Unit 207 of an apartment building located on South Normandie Avenue in Los Angeles, pursuant to a written agreement between Escalante and respondent, the building's landlord. When Escalante moved into the building, respondent informed her that complaints by tenants were to be made in writing to the resident manager of the building. Escalante acknowledged she was informed of this process, but stated: "However, most times you go to the office to make complaints, the managers do not give you the complaint for [*sic*] to fill out but simply acknowledge your request and send you in [*sic*] your way with a promise that repairs will be carried out."

Escalante alleged in her complaint that the building was infested with cockroaches and had defective plumbing when she moved in, but she was unaware of those conditions at the time. Beginning in or about January 2014, she became increasingly aware of dangerous and defective conditions in her apartment, including "infested kitchen cabinets, roaches, mold, infestation of bed bugs, leaks from bathroom ceiling, toilet [overflows] due to plumbing issue, no functioning heater, water bubbles on

2

bathroom ceiling, [and] dirty smelly water running from all faucets in the home." She began notifying respondent of the conditions, but respondent failed and refused to repair the conditions.

In January 2020, Escalante brought this action against respondent, alleging two causes of action against respondent, for breach of the implied warranty of habitability and negligent maintenance of premises. She alleged that she paid rent in the amount of $1,003 per month, but her use of her apartment was reduced by 75 percent as a result of the dangerous and defective conditions. She also alleged she suffered property damage and economic loss from the dangerous and defective conditions.

Respondent demurred to the complaint on the ground that each cause of action failed to state facts sufficient to constitute a cause of action and was uncertain, ambiguous, and unintelligible. Respondent filed a motion to strike certain damages allegations. Respondent also contended Escalante's claims were barred by the statute of limitations. The clerk's transcript does not include the ruling on the demurrer or motion to strike, and respondent has not moved to augment the record on appeal with this ruling. The case progressed to summary judgment on the original complaint, so we presume the demurrer and motion to strike were unsuccessful.

Respondent was successful on summary judgment and this appeal followed.

## DISCUSSION

When a plaintiff appeals from an order granting a defendant summary judgment, we must independently examine the record to determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763,

3

767; Code Civ. Proc., § 437c, subd. (c).) " 'Since defendants obtained summary judgment in their favor, "we review the record de novo to determine whether [they have] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." ' " (*Saelzler*, at p. 767.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Id*. at pp. 768–769.)

Appellant's brief is woefully deficient not only in identifying evidence in the record which would show she offered evidence sufficient to create a triable issue of fact, but in other ways as well.[1] Generally, " 'de novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.' " (*Gunn v. Mariners Church, Inc.* (2008) 167 Cal.App.4th 206, 212.) At the same time, "[a] party is entitled to summary judgment only if it meets its initial burden of showing there are no triable issues of fact and the moving party is entitled to judgment as a matter of law. (See Code Civ. Proc., § 437c, subd. (o)(2).) This is true even if the

---

[1] Appellant failed to provide an adequate record in this case. She did not designate respondent's memorandum of points and authorities in support of its summary judgment motion, respondent's separate statement of facts, the declarations supporting respondent's separate statement of facts, or her own separate statement of facts and supporting declaration. Respondent, however, moved to augment the record with these pleadings and we have granted that motion.

4

opposing party fails to file *any* opposition. (*Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086–1087 [94 Cal.Rptr.2d 575].) 'The court's assessment of whether the moving party has carried its burden—and therefore caused a shift—occurs *before* the court's evaluation of the opposing party's papers. [Citations.] Therefore, the burden on the motion does not initially shift as a result of what is, or is not, contained in the opposing papers. And because a reviewing court employs the same three-step process in the course of its de novo review of a summary judgment [citation], this conclusion applies with equal force on appeal.' (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 367 [94 Cal.Rptr.3d 424], fn. omitted.)" (*Mosley v. Pacific Specialty* Ins. *Co.* (2020) 49 Cal.App.5th 417, 434; see *Denton v. City and County of San Francisco* (2017) 16 Cal.App.5th 779, 794 ["[E]ven without opposition, a court may not grant a motion for summary judgment unless it first determines that defendants have met their initial burden of proof."]; accord, *Reilly v. Inquest Technology, Inc.* (2013) 218 Cal.App.4th 536, 551, fn. 3 ["Reilly suggests the issue of whether the [relevant] Act applied was waived due to Inquest's failure to oppose the summary adjudication motion. Not so. To prevail on the motion, the burden fell on Reilly to submit evidence sufficient to establish each element necessary to sustain a judgment in his favor."].)

In its ruling, the trial court concluded that "[t]he moving party met its burden to make a prima facie showing that no triable issue of material fact exist[ed]," but the trial court's analysis preceding that conclusion fails to offer any explanation of how respondent did so.

5

Accordingly, we consider de novo whether respondent met its initial burden of showing no triable issue of material fact in order to determine whether summary judgment was properly granted. We note that "a moving defendant who claims that the plaintiff cannot prove all the elements of his case must present evidence in support of this claim. The defendant cannot simply challenge the plaintiff to prove his case by opposition. [Citation.] In other words, 'a plaintiff resisting a motion for summary judgment bears no burden to establish any element of his or her case unless and until the defendant presents evidence either affirmatively *negating* that element (proving its absence in fact), or affirmatively showing that the plaintiff does not possess and cannot acquire evidence to prove its existence.' " (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose*, *supra*, 174 Cal.App.4th at pp. 353–354 (*Y.K.A. Industries*).) Typically, a defendant negates an element by offering evidence of factually devoid discovery responses.

I.   ***Breach of the Implied Warranty of Habitability***

The elements of a cause of action for breach of the implied warranty of habitability are the existence of a materially defective condition affecting the premises' habitability; notice to the landlord; the landlord's failure to correct the condition within a reasonable time; and damages. (See *Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1296–1297 (*Erlach*).)

In its memorandum of points and authorities in support of summary judgment, respondent argued that summary judgment was warranted because appellant had no evidence of 1) the existence of a material condition affecting the premises' habitability; 2) notice given to the landlord of any material

6

defective condition affecting the premises' habitability; 3) defendant's failure to correct the defect within a reasonable time; and 4) resulting damages. However, respondent set forth only two issues for summary judgment in its separate statement: it did not have actual or constructive notice of the alleged conditions in appellant's complaint and it did promptly address and repair issues of which it did have actual or constructive notice.[2] The result of this incongruity was that respondent made statements in its memorandum of points and authorities which were not found in its separate statement, particularly with respect to the existence of the defective conditions and resulting damages. Nevertheless, we will discuss each element in turn.

A. *Materially defective conditions*

The first element of a cause of action for breach of the implied warranty of habitability is the existence of a materially defective condition affecting the premises' habitability.

Appellant alleged in her complaint that beginning in or about 2014, there were numerous dangerous and defective conditions in her apartment, including but not limited to

---

[2] Respondent has forfeited its claim, briefly mentioned at oral argument, that the trial court's ruling should be affirmed on the alternative ground of the statute of limitations, an issue which respondent raised but the trial court did not address. Respondent mentions this issue only once in its appellate brief, in the standard of review section, and does not make any substantive factual or legal argument in support of the issue. Simply mentioning that the issue was raised in the trial court is not sufficient, particularly when done in an inappropriate section of the brief. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

"infested kitchen cabinets, roaches, mold, infestation of bed bugs, leaks from bathroom ceiling, toilet [overflows] due to plumbing issue, no functioning heater, water bubbles on bathroom ceiling, [and] dirty smelly water running from all faucets in the home." All of these conditions as described would affect the habitability of the apartment.[3]

In its memorandum of points and authorities, respondent claimed that "While Plaintiff provides a laundry list of alleged dangerous conditions, Plaintiff provides no actual evidence of the existence of these alleged dangerous conditions. The only shred of evidence Plaintiff provides is a picture of bugs in a Ziploc bag and documents related to bed bug treatment by Amen Pest Control, which Defendant ordered to treat [the] bed bug complaint." Respondent does not support this contention with a citation to its separate statement and there is no comparable statement in that document. As respondent itself points out, the separate statement is not merely a technical requirement: "it is an indispensable part of the summary judgment or adjudication process."

Even setting aside the deficiency in the separate statement, respondent's vague and general contention is difficult to analyze. Respondent seems to be relying on appellant's responses to requests for document production and further seems to suggest that the responses are factually devoid. This approach might have some merit if appellant was required to produce

---

[3] They would generally violate Civil Code section 1941.1, and a violation of that section or another "statutory housing standard that affects health and safety is a strong indication of a materially defective condition." (*Peviani v. Arbors at California Oaks Property Owner, LLC* (2021) 62 Cal.App.5th 874, 891.)

photographic or documentary evidence of the defective conditions in her apartment. Respondent has not cited, and we are not aware of, any such requirement. Indeed, appellant's testimony alone is sufficient evidence of the conditions. There is nothing in the record to suggest that appellant would be unable to testify at trial concerning her observation of defective conditions in her apartment.[4]

---

[4] Although not determinative of our analysis on this appeal, we note that appellant's declaration in support of her opposition is in fact evidence that the defective conditions existed. She is clearly competent to testify that her heater did not work, her toilet overflowed, dirty and smelly water came from all her taps, there was a leak from her bathroom ceiling and water bubbles on that ceiling and there were insect infestations of her house. There is no requirement that she corroborate this testimony with photographs or otherwise. Moreover, these descriptions of the non-insect conditions are sufficiently detailed that a representative could easily locate them within appellant's apartment. Locations of insects are more difficult to specify, as insects are mobile. Appellant's declaration indicates her kitchen was the locus of the infestation. Appellant also narrowed down the time frame in which she became aware of those conditions to August 2015, and stated that she complained about the defective conditions that same month. Similarly, her declaration is evidence that there were bedbugs in her apartment in 2017.

We also note the trial court declined to rule on respondent's evidentiary objections to appellant's declaration and cited the declaration in other parts of its ruling. Given this reliance on the declaration for some issues, it is not clear to us why the court ignored the declaration when it found appellant had not produced sufficient evidence to raise a triable issue of material fact as to the defective conditions.

Respondent also contends there is evidence in the form of city inspection reports which affirmatively shows there were no defective conditions in appellant's apartment. Although respondent does not support this contention with a citation to its separate statement, we are readily able to locate the relevant statements.

Undisputed Material Fact (UMF) 9 states: "The City of Los Angeles Housing Department ('HCIDLA') conducted a regular inspection of part of the Systemic Code Enforcement Program (SCEP) on August 17, 2016. The only deficiency found in Unit #207 was for a smoke detector that was too close to a ceiling fan. The ceiling fan had been installed by the tenant. Defendant moved the smoke detector and installed another smoke detector in the hallway. [¶] *See* Mills Decl., ¶ 10, Exhibit A."

The cited evidence lacks foundation and is hearsay. The referenced Exhibit A to the Mills declaration includes a one-page summary of the 2016 inspection report which does not list specific violations, and does not identify which units had violations; the report is not authenticated, and Mills does not even state that he has attached it to his declaration.[5] Mills does not explain how he acquired personal knowledge of the specific finding for appellant's unit.[6] But even if we accepted Mills's

---

[5]     To be precise, although Mills states that he has attached a true and correct copy of a 2021 inspection report, he does not make the same statement with respect to the 2016 (or 2017) reports attached to his declaration. In fact, he does not state that he is attaching those reports as an exhibit.

[6]     Mills did not state he worked for respondent in 2016 or explain what his job duties. We cannot simply speculate that he

10

statement about the 2016 report, that report would at most show that the defective conditions were not present in August 2016. It would not negate the earlier or later existence of those conditions.

If we were to consider the 2016 report, we would also have to consider the 2021 report, also offered by appellant, although it suffers from similar evidentiary problems. The 2021 report is much more detailed and shows several violations for appellant's unit; respondent apparently believes those violations are minor and not material, but the report itself states the condition affects habitability.[7]

Thus, respondent has not offered evidence " 'either affirmatively *negating* [the materially defective condition] element (proving its absence in fact), or affirmatively showing that the plaintiff does not possess and cannot acquire evidence to

accompanied the city inspector during his inspection of appellant's apartment in 2016.

If Mills read a copy of the full report, the report itself would be hearsay and his statements would be double hearsay. Statements by other employees describing the contents of the (full) report to Mills would be hearsay, or possibly double hearsay and Mills's statement would be double or triple hearsay.

[7] The report finds an "inter-wall/ceiling" violation consisting of "1. Peeling paint at ceiling corner above tub[,] 2. Water damaged wall between tub and toilet [and] 3. Bubble at wall above window." The report notes that inter-wall/ceiling violations are rated as low severity because "Defective wall/ceiling covering creates a minimally untenantable situation and could diminish weather protection. Although this type of violation reduces habitability and may cause injury, it is unlikely to be life threatening."

prove its existence.' " (*Y.K.A. Industries, supra,* 174 Cal.App.4th at pp. 353–354.)

### B. *Notice*

The complaint alleges appellant "repeatedly notified management, of the defects and dangerous conditions described in this complaint and requested that Defendant have them repaired."

Respondent acknowledged receiving three written complaints in 2015, and two complaints in 2017 about a bedbug infestation. Respondent contended appellant could not show it received other notice. By this, respondent appears to have meant that appellant's discovery responses were factually devoid. Respondent argued that "Plaintiff cannot recall to whom nor when Plaintiff gave notice of the alleged conditions. Plaintiff recalls that she has given notice of the conditions in August 2015 and that she notified a manager of the property of the conditions." Although respondent did not support this contention with a citation to its separate statement, the corresponding UMF is readily ascertainable. UMF 17 states: "Plaintiff cannot remember the details of who or when she made any complaints regarding her unit. Plaintiff believes that she made complaints to a property manager sometime in August 2015. [¶] *See* Wolf Decl., ¶ 2, 4-6, Exhibits 1-3." Although lacking in detail, this does not rise to the level of a factually devoid discovery response. It shows a reasonable narrow date range for appellant's complaint and identifies the person to whom she complained by title. Respondent certainly knows this person's identity. In addition, respondent does not appear to dispute that it received notice of the bedbug complaints in April and November 2017.

12

We recognize that respondent also stated appellant was required to make all complaints in writing, and that any oral complaints should, in effect, not impose a duty to repair on respondent. Respondent has not cited any legal authority for the proposition that written notice is an element of a cause of action for the breach of the implied warranty of habitability, or for a cause of action for negligence. The warranty of habitability is implied in every lease in California, and conditions on that warranty, assuming such conditions were permissible, would have to be included in the lease. Respondent has offered no evidence that written notice to the building manager was a part of appellant's lease. Respondent's representative stated only that appellant "was advised of the [process] when she moved in."[8]

---

[8] Although not determinative of our analysis on this appeal, we note appellant acknowledged that she was informed of the written notice requirement, but stated in her declaration that "However, most times you go to the office to make complaints, the managers do not give you the complaint for [*sic*] to fill out but simply acknowledge your request and send you in [*sic*] your way with a promise that repairs will be carried out." This would certainly raise a triable issue of material fact concerning whether respondent actually required written notice.

We question the trial court's reading of appellant's declaration on this matter. The trial court stated: "Plaintiff states that she did not receive written receipts of her complaints; rather, managers would often 'simply acknowledge your request and send you in [*sic*] your way with a promise that repairs would be carried out.'" We understand this statement to mean that the managers would not give appellant a complaint form to fill out, that is, the managers told appellant she did not need to make a written complaint. We note, again, that appellant's testimony is evidence of the fact to which she testified, and there is no

13

Respondent does not provide evidence expressly denying it received oral complaints from appellant.

Thus, respondent has not offered evidence " 'either affirmatively *negating* [the notice] element (proving its absence in fact), or affirmatively showing that the plaintiff does not possess and cannot acquire evidence to prove its existence.' " (*Y.K.A. Industries, supra,* 174 Cal.App.4th at pp. 353–354.)

C.    *Repair within a reasonable time*

The complaint alleged that respondent did not repair the defective conditions or did not repair them in a reasonable time.

Respondent offered evidence that it remedied the three pre-August 2015 complaints by appellant.  Appellant did not, in fact, dispute the pre-August 2015 toilet and wall repairs.  Respondent's response to the April 15, 2015, roach complaint appears to have been a roach treatment.  If the treatment was effective, a matter not shown by any evidence, it was not long-lasting.  Both appellant's declaration and her interrogatory responses show a roach infestation in August 2015.  Respondent does not contend it provided a roach treatment in or after August 2015.

Respondent also did not offer evidence that it repaired the other defects identified in the complaint in a timely manner.  Rather, respondent relied on its own summary of a 2016 city inspection to show the defective conditions did not exist at that time.  Leaving aside the evidentiary issues with the inspection report, the inspection took place on August 17, 2016, a year after appellant's August 2015 complaints.  Even if we considered that

requirement that she provide corroboration such as receipts for her complaints.

14

report, and treated it as conclusive, a year to make repair would not be a reasonable period as a matter of law for ordinary repairs.

Respondent's own evidence also does not show that it fixed the underlying problem of defective plumbing which appellant alleged had existed in the building. The August 2016 inspection report may be evidence that respondent repaired the bathroom leak damage identified by appellant, but the same or similar wall and ceiling damage showed up in the 2021 inspection report. Five years would not be a reasonable time to repair defective plumbing.

We also find that respondent did not show that it remedied appellant's bedbug infestation in a reasonable time, or at all. It is undisputed that respondent ordered a one-time heat treatment in April 2017 in response to the bedbug complaint. There is, however, no evidence that this treatment actually eliminated the bedbugs. Respondent did not, for example, offer evidence that it inspected the apartment and found no bedbugs.[9] Nor did it

---

[9] Respondent stated that as part of its process for handling tenant complaints, "After the work is completed, the Resident Manager confers with the tenant, inspects the finished work, and then notifies the office of the completion of the work." There is no evidence that this actually occurred with the bedbug treatments.

Although the burden did not shift to appellant to show the ineffectiveness of the remedy, appellant did state in her declaration that she continued to get bedbug bites during the summer of 2017. To the extent that respondent relied on the 2017 city inspection report to show that the bedbugs were eliminated before summer, that reliance was misplaced. As described by respondent, the inspection occurred because appellant "called the city for a complaint on May 3, 2017. The city inspected and issued work orders . . . . All repairs were

15

provide expert testimony that a single heat treatment is normally sufficient to eliminate bedbugs.

As respondent acknowledged, appellant complained of bedbugs again in November 2017.  Viewed in the light most favorable to appellant, this evidence should have put respondent on constructive notice that bedbugs were a persistent problem and that one treatment might not eliminate them.  Respondent did order a new and different treatment, involving chemicals.  Respondent has not offered any evidence that this treatment was effective either.

Thus, respondent has not offered evidence " 'either affirmatively *negating* [the repair] element (proving its absence in fact), or affirmatively showing that the plaintiff does not possess and cannot acquire evidence to prove its existence.' " (*Y.K.A. Industries, supra,* 174 Cal.App.4th at pp. 353–354.)

D.    *Damages*

Appellant alleged in her complaint that she suffered two forms of damage: a reduction in the use of her apartment by 75 percent as the result of the dangerous conditions and "property damage . . . including . . . mattresses, bedding, linens [and] pillows . . . due to contamination" by insects and mold.

Respondent contended in its memorandum of points and authorities that appellant had no evidence of damages, but at the same time noted that appellant "present[ed] a receipt for new bedding materials."  We understand this to be a reference to appellant's discovery responses, although respondent did not

completed and the complaint was satisfactorily closed on July 6, 2017."  There is no indication that the complaint involved bedbugs or that the inspector looked for them.

16

provide a citation to the separate statement and did not list this as an issue to be decided. Viewed in the light most favorable to appellant, this is a receipt for bedding damaged by respondent's failure to remedy the defective conditions in appellant's apartment, particularly in light of the allegations of appellant's complaint. Respondent has not explained why this should not be treated as evidence of damages, and there is similarly no discussion by the trial court of why property damage would not be recoverable.

More importantly, a tenant may recover damages in the amount of "the difference between the fair rental value of the premises had they been in the condition warranted and their fair rental value with the uninhabitable condition [(*Green v. Superior Court* (1974) 10 Cal.3d 616, 638)], [or] the rent paid by the tenant multiplied by the percentage of the premises rendered unusable due to the uninhabitable condition (*id.* at p. 639, fn. 24; *Cazares v. Ortiz* (1980) 109 Cal.App.3d Supp. 23, 33 [168 Cal.Rptr. 108])." (*Erlach, supra,* 226 Cal.App.4th at p. 1298.) Under this second method, the trial court determines the percentage of unusable premises after hearing evidence of the defects. (*Cazares,* at p. 29.) Appellant's rental payments were not disputed, and appellant would not need to produce any additional evidence to recover under this theory. Put differently, because respondent has not negated the elements of defect, notice and repair, he has not negated this element either.

## II.    *Negligence Cause of Action*

In its pleadings and separate statement, respondent did not treat the negligence cause of action any differently than the implied warranty of habitability cause of action. Thus, based on respondent's showing in the trial court, we would reach the same

17

conclusion for the negligence cause of action as we did for the breach of the implied warranty of habitability cause of action. Summary adjudication of the cause of action is not warranted.

However, the trial court did treat the two causes of action differently in its ruling. The trial court explained that the elements of a negligence claim and a premises liability claim are the same: a legal duty, breach of that duty, and proximate cause resulting in injury. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.)

The court then found that respondent "had a duty as the manager of [appellant's] residence to identify and counteract any materially defective conditions there. As seen above, [respondent] operated a protocol to allow residents in its property opportunity to raise maintenance concerns with management. [Citation.] Further, [appellant's] use of this procedure prompted [respondent] to address insect infestations on three separate occasions and a plumbing malfunction. [Citation.] Given the relatively short time within which [respondent] addressed [appellant's] documented complaints, the court finds that [respondent] did not breach their duty to [appellant] to behave as a reasonable manager of [the] residential property."

The mere existence of an unobserved protocol cannot satisfy a landlord's duty. As we mention above in the background section and in footnote 8, appellant states in her declaration that respondent did not follow its own protocol: it sometimes refused to provide the requisite forms to make a written complaint. Thus, even if the burden had shifted to appellant to show a triable issue of material fact concerning notice on the negligence cause of action, she has made that showing.

It is not entirely clear what the court means by "address," but as we have discussed above, respondent did not provide any evidence that its insect treatments worked. Specifically, respondent did not provide any evidence that it followed its protocol for making repairs, which called for it to inspect the finished work and consult with the tenant.

The trial court also found that appellant did not present evidence that respondent's "alleged negligence proximately caused [her] injuries; as stated above, [appellant] does not offer an itemized, specific list of her maintenance requests that went unheeded by [respondent]." As we mention in footnote 4 above, in her declaration, appellant does provide an adequately specific list of the defective conditions in her apartment and does state that she notified respondent of them. While it is not entirely clear what the court means by "unheeded," respondent does not claim to have addressed those defective conditions in a timely manner, or at all. The most that can be said is that respondent offered inadmissible hearsay evidence that the conditions were not present a year later. Similarly, while respondent did offer evidence that it provided a single treatment for each insect complaint, there is at least a question of fact as to whether it would be "heeding" appellant's complaints if the treatments provided were not effective remedies of the defective conditions.

Accordingly, summary adjudication was not proper on this cause of action for negligence.

## DISPOSITION

We reverse the judgment and remand for further proceedings.  Appellant is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.